**Kevin C. Brague, OSB No. 050428**
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **RICHARD RIORDAN**,<br><br>Plaintiff,<br><br>v.<br><br>**LANE COMMUNITY COLLEGE**, by and through the LANE COMMUNITY COLLEGE BOARD OF EDUCATION; **JESSE MALDANADO**, individually and in his official capacity as a Board Member; **KEVIN ALLTUCKER**, individually and in his official capacity as a Board Member; **JULIE WEISMANN**, individually and in her official capacity as a Board Member; **STEVE MITAL**, individually and in his official capacity as a Board Member; **DR. STEPHANIE BULGER**, individually and in her official capacity as President of Lane Community College; **DR. SHELLEY TINKHAM**, individually and in her official capacity as Vice President of Academic Affairs at Lane Community College; **DR. COLMAN JOYCE**, individually and in his official capacity as Vice President of Student Services at Lane Community College; **CARL YEH**, individually and in his official capacity as Dean of Student Engagement at Lane Community College; **LISA RUPP**, individually and in her official capacity as Director of Public Safety & Emergency Preparedness at Lane Community College;<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

**INTRODUCTION**

1.

Plaintiff, Richard Riordan, alleges that Defendants barred him from campus and are preventing him from registering for classes because he exercised his First Amendment right to speak against the Lane Community College Board of Education, its Members, Lane Community College's President and her subordinates and agents for ending its Health Information Management programs. In this regard, Defendants expelled Plaintiff with a wink and a nod rather than provide him notice and a hearing.

Plaintiff seeks injunctive relief and damages for Defendants' deprivations of his rights guaranteed to him by the First and Fourteenth Amendments to the U.S. Constitution via 42 USC § 1983, as well as pendant state law claims for breach of contract. Plaintiff also seeks his attorney fees and litigation expenses/costs, including expert witness fees and expenses.

**JURISDICTION AND VENUE**

2.

Federal Court jurisdiction exists under 28 USC § 1331 and 28 USC § 1343 because this action arises under the First and Fourteenth Amendments to the U.S. Constitution made applicable by 42 USC § 1983 and 1988 and Declaratory Relief Act, 28 USC § 2201-2202. Supplemental jurisdiction arises under 28 USC § 1367 for all common law and Oregon claims.

3.

Venue is proper in the U.S. District Court of Oregon, Eugene Division because Defendants and all acts alleged herein occurred in Lane County, Oregon.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

**PARTIES**

4.

At all material times, Plaintiff Richard Riordan ("Riordan" or "Plaintiff") was a resident of Lane County, Oregon and was a student at Lane Community College.

5.

Defendant Lane Community College ("LCC") is a special government body meaning it "is neither an individual, nor is it part of 'state' government" and is not subject to the Eleventh Amendment. ORS 341.287 and *Smith v. Portland Cmty. Coll.*, 299 Or App 305, 309, 450 P3d 1037, 1039 (2019). LCC is governed by elected members of its Board of Education, and managed by its officers, employees, and agents all of which constitute a local public body and are subject to civil actions and liability. *See*, ORS 341.290.

6.

Defendant Jesse Maldanado is a LCC Board Member and pursuant to ORS 341.290 "shall be responsible for the general supervision and control of any and all community colleges operated by the district." The Board approved the LCC's policies, procedures, and practices that resulted in the deprivation of Riordan's constitutional rights, and the Board knew or reasonably should have known that LCC's policies, procedures, and practices would lead to this deprivation. Despite this knowledge, the Board was deliberately indifferent to the unconstitutionality of LCC's policies, procedures, and practices as well as Riordan's constitutional rights.

7.

Defendant Kevin Alltucker is a LCC Board Member and pursuant to ORS 341.290 "shall be responsible for the general supervision and control of any and all community colleges operated by the district." The Board approved the LCC's policies, procedures, and practices that



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

resulted in the deprivation of Riordan's constitutional rights, and the Board knew or reasonably should have known that LCC's policies, procedures, and practices would lead to this deprivation. Despite this knowledge, the Board was deliberately indifferent to the unconstitutionality of LCC's policies, procedures, and practices as well as Riordan's constitutional rights.

8.

Defendant Julie Weismann is a LCC Board Member and pursuant to ORS 341.290 "shall be responsible for the general supervision and control of any and all community colleges operated by the district." The Board approved the LCC's policies, procedures, and practices that resulted in the deprivation of Riordan's constitutional rights, and the Board knew or reasonably should have known that LCC's policies, procedures, and practices would lead to this deprivation. Despite this knowledge, the Board was deliberately indifferent to the unconstitutionality of LCC's policies, procedures, and practices as well as Riordan's constitutional rights.

9.

Defendant Steve Mital is a LCC Board Member and pursuant to ORS 341.290 "shall be responsible for the general supervision and control of any and all community colleges operated by the district." The Board approved the LCC's policies, procedures, and practices that resulted in the deprivation of Riordan's constitutional rights, and the Board knew or reasonably should have known that LCC's policies, procedures, and practices would lead to this deprivation. Despite this knowledge, the Board was deliberately indifferent to the unconstitutionality of LCC's policies, procedures, and practices as well as Riordan's constitutional rights.

10.

Defendant LCC President Dr. Stephanie Bulger is the President of LCC, oversees LCC and is responsible for the administration of the college including implementing LCC Board



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

policy including those policies, procedures, and practices depriving Riordan of his First and Fourteenth Amendment rights. President Bulger knew or reasonably should have known that the College's policies, procedures, and practices would lead to this deprivation. President Bulger knew that individuals under her supervision implemented the College's policies, procedures, and practices that deprived Riordan of his constitutional rights, and President Bulger, with deliberate indifference, failed to act with regard to the constitutional rights of Riordan and all LCC students. At all times relevant herein, she was acting under color of state law and within the scope of her employment with LCC.

11.

Defendant LCC Vice President of Academic Affairs Dr. Shelley Tinkham oversees and manages LCC and is responsible for the administration of the college including implementing LCC Board policy including those policies, procedures, and practices depriving Riordan of his First and Fourteenth Amendment rights. Vice President Tinkham knew or reasonably should have known that the College's policies, procedures, and practices would lead to this deprivation. Vice President Tinkham knew that individuals under her supervision implemented the College's policies, procedures, and practices that deprived Riordan of his constitutional rights, and Vice President Tinkham, with deliberate indifference, failed to act with regard to the constitutional rights of Riordan and all LCC students. At all times relevant herein, she was acting under color of state law and within the scope of her employment with LCC.

12.

Defendant LCC Vice President of Student Services Dr. Colman Joyce oversees and manages LCC and is responsible for the administration of the college including implementing LCC Board policy including those policies, procedures, and practices depriving Riordan of his



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

First and Fourteenth Amendment rights. Vice President Joyce knew or reasonably should have known that the College's policies, procedures, and practices would lead to this deprivation. Vice President Joyce knew that individuals under his supervision implemented the College's policies, procedures, and practices that deprived Riordan of his constitutional rights, and Vice President Joyce, with deliberate indifference, failed to act with regard to the constitutional rights of Riordan and all LCC students. At all times relevant herein, he was acting under color of state law and within the scope of his employment with LCC.

13.

Defendant LCC Dean of Student Engagement Carl Yeh oversees and manages LCC and is responsible for the administration of the college including implementing LCC Board policy including those policies, procedures, and practices depriving Riordan of his First and Fourteenth Amendment rights. Dean Yeh knew or reasonably should have known that the College's policies, procedures, and practices would lead to this deprivation. Dean Yeh knew that individuals under his supervision implemented the College's policies, procedures, and practices that deprived Riordan of his constitutional rights, and Dean Yeh, with deliberate indifference, failed to act with regard to the constitutional rights of Riordan and all LCC students. At all times relevant herein, he was acting under color of state law and within the scope of his employment with LCC.

14.

Defendant LCC Director of Public Safety & Emergency Preparedness Lisa Rupp oversees and manages LCC and is responsible for the administration of the college including implementing LCC Board policy including those policies, procedures, and practices depriving Riordan of his First and Fourteenth Amendment rights. Director Rupp knew or reasonably



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

should have known that the College's policies, procedures, and practices would lead to this deprivation. Director Rupp knew that individuals under her supervision implemented the College's policies, procedures, and practices that deprived Riordan of his constitutional rights, and Director Rupp, with deliberate indifference, failed to act with regard to the constitutional rights of Riordan and all LCC students. At all times relevant herein, she was acting under color of state law and within the scope of her employment with LCC.

**STATEMENT OF FACTS**

15.

Richard Riordan graduated from high school in 2022. He enrolled as a student at LCC and began taking classes in the Winter term 2023 and has continued to enroll and take classes at LCC nearly every following term. In addition to his enrollment at LCC, Riordan joined the Army Reserves and completed his basic combat training at Ft. Jackson, South Carolina in 2025. During this later time, Riordan became more aware and involved in local politics and LCC governance by its administration and Board Members.

16.

LCC adopted numerous policies related to students, its Board, and operations. Some of those policies include:

LCC's Policy "Freedom of Inquiry and Expression" states in relevant part:

> Lane Community College serves college learners by providing programs of learning that enable students to pursue and achieve their educational and vocational goals. Free inquiry and expression are indispensable to the pursuit of these objectives. The transmission of knowledge, the search for truth and the development of the student depends upon appropriate opportunities and conditions in the classroom, on the campus and in the community. In order for the college to provide conditions that are conducive to the effective performance of its purpose, it acknowledges a commitment to those purposes and to the principles of democratic freedom for itself and others.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Discussion and expression of all views within the college shall be limited only by civil and criminal law.

LCC's Board Policy 2345 "Public Participation at Board of Education Meetings" states:

The Lane Community College Board of Education welcomes public comment in all forms, and strives to create and promote a welcoming and accessible environment for public comment and feedback regarding agenda items and other issues of concern.

There will be a time at each regularly scheduled Board of Education meeting for the general public to address the Board of Education on items on the agenda or on other matters of interest to the public.

Members of the public may address the Board of Education either through written communications or by speaking during a Board of Education meeting.

Persons wishing to speak shall do so at the time designated at the meeting for public comment. At the discretion of a majority of the Board of Education the time allotment for public comment at any one board meeting may be increased or decreased. LCC students will be prioritized to speak first. Speakers will generally be allotted 3 minutes to provide their testimony. If twenty (20) or more individuals sign up to speak, the time allotted for each speaker shall be limited to two (2) minutes, unless a majority of the Board of Education votes to authorize a different time limit. Written communications submitted to the Board of Education will be included in the board packet if they are received at least twenty four (24)hours prior to the board meeting.

Other expectations or guidelines for public comment to the Board of Education may be articulated in the board's operating procedures.

Claims for damages are not considered communications to the Board of Education under this policy, but shall be submitted to Lane Community College.

LCC's Policy "Student Rights and Responsibilities" states, in relevant part:

<u>Freedom of Access to Higher Education</u>

Lane Community College is open to all persons who are qualified according to its admission and good standing requirements. Anyone age 18 or older may enroll. No high school diploma is necessary. Individuals younger than 18 may attend if they obtain approval from their high school principal or if they have already received their high school diploma. Community education classes generally are open to anyone 16 or older.

Under no circumstances will an applicant be denied admission to the college because of age; sex; race; color; religion; physical or mental disability; national origin; marital status; sexual orientation; pregnancy; veteran's status; familial relationship;



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

expunged juvenile record; association with anyone of a particular race, color, sex, national origin; nor will preference for admission be based on economic status.

Freedom of Inquiry and Expression

Students and student organizations will be free to examine and discuss all items of interest and to express opinions publicly and privately. Students will always be free to support causes by orderly means, in ways that do not disrupt the operation of the institution or violate college policies and procedures.

Use of Facilities

The facilities and services of the college will be open to all of its enrolled students, provided the facilities and services are used in a manner appropriate to the academic community and incompliance with college procedures. Student Life and Leadership Development reserves tablespace and assists student organizations in scheduling space with the college. See also Facilities: Use in General.

.

Student Participation in College Policies

Students are free to express their views, individually and collectively, on issues of institutional policy and on matters of general interest to the student body. Student representatives are welcome on college committees and councils, and the ASLCC president represents student interests to the board.

Distribution of Literature

First Amendment freedom of the press is applicable to the campus of Lane Community College. Students and the distribution of off-campus publications are protected on the main campus and outreach centers. Distribution may be restricted only if it can be shown that such activity would cause a disturbance or disruption of normal college activities. Materials to be posted require authorization for such distribution from the director of Student Life and Leadership Development. Once authorized, the distribution will take place in the prescribed locations on campus, should not disrupt the normal operation of the institution and should not cause a litter problem on the campus.

In case a student, employee or organization is denied the right to distribute materials on campus, the decision is subject to appeal. All appeals or complaints are subject to the student complaint procedure.

The college reserves the right to designate specific areas for the distribution of printed materials. A listing of these areas is maintained by the director of Student Life and Leadership Development on the main campus and by the designated building administrator at each of the following outreach centers: Downtown Center, LCC at Florence and LCC at Cottage Grove. See also Distribution of Literature.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

LCC's "Student Code of Conduct" states, in relevant part:

1. Disruptive Behavior. Substantial disruption of College operations including obstruction of teaching, research, administration, other College activities, and/or other authorized non-College activities which occur on campus;

a. Note: In order to preserve the academic integrity of classroom environments, and/or College functions, interim actions may be imposed on individuals engaging in disruptive and/or unsafe behavior. At the discretion of an employee, students may be removed from a class, room, or space for one day or session prior to a conduct conference.

b. With permission of the employee, the student may return to the class, room, or space after the one day or session. The employee may also file an incident report.

c. If the employee believes the student's behavior warrants longer removal from the class, room or space, the employee must file an incident report documenting the alleged violation of the Student Code of Conduct and justification for longer removal. Students will be notified of the date, time, and location of the conduct conference, and the student cannot return to the room or space until notice from the Executive Dean of Student Affairs or the Conduct Resolution Administrator.

LCC's Policy "Trespass Notice" states, in relevant part:

1) When an individual has a relationship with the college (student or employee) and the individual's behavior is disruptive to campus operations or poses a risk to the campus, a Public Safety Officer may require the individual to leave for the day (Temporary Trespass Notice). In this case the person (student or employee) will be referred to the appropriate administrative process for follow up when they return to the campus.

Such temporary notices may be extended until arrangements for due process are established, when the safety of campus members is at risk.

2) Permanent Trespass Notices are issued for violations of college policy, the Student Code of Conduct, or Oregon or federal law for actions which pose a threat to the campus community, or which create a disruption of the college learning environment and/or college activities. Permanent Trespass Notices are typically, but not always, issued to persons who are not affiliated with the college.

Persons who violate the Trespass Notice will be subject to arrest and prosecution for criminal trespass as provided by Oregon Revised Statutes 164.245.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

> Campus members are notified in a specific and individual case-by-case manner about trespassed persons. Notification is given when the safety of others is obviously compromised by the potential presence or return to campus of an individual. Notifications may be generated by Public Safety or by the Threat Assessment Team, or by other college officers or representatives in collaboration with Public Safety, in incidents where a concern for campus safety is identified.
>
> LCC's Academic Catalog states:
>
> If you fail to pay your account, the college may take any or all of the following actions:
>
> […]
>
> Students will be mailed a final notice for accounts that are overdue before the college assigns them to a collection agency that reports them to a credit bureau. The collection agency will add additional collection fees, court and attorney costs to account.

17.

On or about February 1, 2026 Riordan emailed members of the LCC Board and LCC President Bulger to discuss renewal of President Bulger's contract instead of having her contract renewal on the consent agenda of the Board meeting.

18.

On or about March 18, 2026 LCC announced its decision to suspend the Criminal Justice and Health Information Management (HIM) programs at its Board meeting.

19.

On or about March 31, 2026 Riordan and other students spoke at the Board meeting during the Public Comment section of the meeting. Riordan voiced his criticism of the decision to suspend the HIM Program and cited to LCC citing the use of misleading data, a lack of transparency, professionalism in that students were not informed, and how these decisions impact both credibility and student trust in the college. A faculty member of LCC also spoke out against LCC's Board's decision to suspend the HIM Program.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

20.

On or about April 17, 2026 Riordan wrote an email directly to LCC Vice President of Academic Affairs Shelley Tinkham where he stated that the graduation data of the HIM Program presented to the Board was inaccurate, asked if it was done by incompetence or by design, stated that she was cherry picking data to mislead the public, and asked her if she was going to correct the inaccurate statement about the number of graduates of the HIM Program at LCC. VP Tinkham responded that the information presented to the Board was accurate. Riordan further responded with VP Tinkham's transcribed presentation and the data showing her presentation was inaccurate.

21.

On or about April 20, 2026 Riordan emailed all Board members and President Bulger leveling criticisms against the Board about not being involved in college operations, not politicizing the board, and other substantially similar policy or board matter related comments.

22.

On or about April 22, 2026 Riordan spoke in defense of the HIM Program during the public comment portion of an LLC Board meeting. Riordan spoke about the lack of transparency, the harm to students, and the hypocrisy of administration. The LCC Board then voted to suspend the Criminal Justice and HIM Programs.

23.

On or about April 27, 2026 Riordan received an email from "academicadvising@lanecc.edu" and to "riordanr@my.lanecc.edu" about academic advising. There was no indication or statement that it was a LCC campus wide mass email or not to reply,



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

and Riordan replied to the email. In his reply Riordan questioned the need to meet with academic advising when programs were arbitrarily being cut.

24.

On or about April 30, 2026 Riordan emailed President Bulger and others criticizing the language used in LCC's FY2027 budget mitigation communications, argued that many statements rely on rhetorical framing, administrative jargon, and "spin" rather than directly addressing the real impacts of the decisions. He quoted specific phrases from the administration's message, claiming they minimized harm, and obscured accountability.

25.

On or about May 1, 2026 Riordan emailed the LCC Board member Jesse Maldanado, who cast the deciding vote to suspend the HIM Program, noting Maldanado's perceived political ambitions, accused him of exchanging student wellbeing for political convenience, and selling-out students.

26.

On or about May 5, 2026 Riordan received a text on his cell phone from LCC Dean of Student Life Carl Yeh who requested that he meet with him and LCC Public Safety Director Lisa Rupp. Later Riordan met via Zoom with Dean Yeh and Director Rupp who inquired about Riordan's interactions with college officials. Riordan asked Dean Yeh why he texted him and Carl replied that it was for "urgency." Dean Yeh told Riordan not to send mass emails, and then advised (i.e. thinly veiled threat) that Riordan "should be careful." In response, Riordan requested written policies or guidelines concerning the meeting and its subject matter which Dean Yeh never provided. To date, Riordan has not received any guidelines or written expectations or documentation concerning this meeting from Dean Yeh, Director Rupp, or LCC.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

27.

No Board Member, administrator, officer, employee, or agent of LCC has complained of, or documented, any threat, threatening behavior, harassment, concern, disruption to any class, meeting, Board meeting, function, event, or operation by Riordan.

28.

On or about May 6, 2026 Riordan emailed LCC Board members stating that proposals to cap public comment at board meetings undermines democratic accountability by limiting opportunities for community members to voice concerns about decisions that affect their education, jobs, and futures.

29.

On or about May 18, 2026 Riordan emailed Dean Yeh requesting confirmation that the Dean would not text him. Riordan received no response.

30.

On or about May 18, 2026 Riordan emailed LCC Board Members, LCC Administration, several faculty members, and union representatives criticizing a proposal to place limits on public comment at LCC Board meetings, arguing that doing so would undermine democratic participation and accountability. He argued that elected officials have a responsibility to hear public concerns, especially when board decisions affect students, employees, educational programs, and community members, and he characterizes efforts to reduce public input as an attempt to manage criticism rather than address it.

31.

On May 21, 2026 Riordan emailed Dean Yeh requesting confirmation that Dean Yeh would not text him. Riordan received no response.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

32.

On May 26, 2026 Riordan emailed Dean Yeh requesting confirmation that Dean Yeh would not text him. Riordan received no response.

33.

On or about May 27, 2026 Riordan attended the LCC Board Budget meeting. He spoke at the meeting and was critical of how Board Members ignored the student needs and even ignored the student body president. Riordan stated that Board Members say they have values but it is like counterfeit currency. After the meeting, Riordan saw and approached Board Member Kevin Alltucker in the parking lot and discussed his priorities, his stand on student needs & college sustainability, and other topics. This conversation occurred in front of campus security who closely observed the conversation. No threats, use of language, or complaints about inappropriate behavior were observed or made, and there was no disruption to any of LCC's operations.

34.

On June 2, 2026 Riordan emailed LCC Board members, several faculty, student government representatives, LCC Administrators, and local government officials criticizing LCC Board Member Kevin Alltucker for his stance on budget cuts and program suspensions. Riordan stated that Board Member Alltucker relied on performative, self-serving austerity rhetoric, and that Board Member Alltucker was an example of how people mistake performance for principle when the rhetoric is hiding bad judgement.

35.

On or about June 3, 2026 Riordan spoke at the LCC Board Budget Meeting. Riordan stated that business-backed Board Members push for austerity measures and that this did not



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

serve the best interests of the college, creating a public trust issue. Riordan distributed handouts during the meeting that stated LCC Board Members Alltucker's and Julie Weismann's campaigns were paid for by Lane County big business. Riordan's handout detailed the donations to their campaigns and Political Action Committees, which data came from public records (see, https://secure.sos.state.or.us/orestar/gotoPublicTransactionSearch.do; Kevin Alltucker's PAC ID: 22605 and Julie Weismann's PAC ID: 24126).

36.

During the June 3, 2026 Board meeting, LCC Board Member Steve Mital mentioned to co-Board Member Julie Weismann that "someone has made an allegation against you." In response, on June 3, 2026 Riordan emailed LCC Board Members the definition of "allegation" and the link to the Oregon Secretary of State Campaign finance transaction website.

37.

On June 17, 2026 Riordan emailed Vice President Tinkham asking why individual counseling support promised to students in the HIM Program during an April 22 2026, Board meeting had not yet been provided by mid-June. He further stated that many affected students did not pursue the proposed transfer pathway and claims that a significant number left college altogether, raising concerns about the impact of the FY2027 mitigation plan. Riordan called on Vice President Tinkham to explain when the promised counseling assistance will be delivered and expresses frustration with the delay in fulfilling that commitment.

38.

On June 25, 2026 LCC Public Safety Office (i.e. Director Lisa Rupp under the direction of Vice President Colman Joyce) emailed Riordan a notice of trespass. It states:



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

> "For conduct that has disrupted Lane Community College operations, you have been trespassed. You are not allowed to return to any properties under Lane Community College control, including those it has control of during college activities. If you return, you will be subject to administrative and/or criminal prosecution." The Notice of Trespass lists seven LCC properties and campuses.

The Notice of Trespass also states:

> "If you are found in or on Lane Community College property you will be subject to arrest under Oregon Revised Statute 164.245.

39.

After receiving the Notice of Trespass Riordan attempted to register for classes he discovered that a "V-President Hold" prevented his registration from June 25, 2026 until December 31, 2099.

40.

Neither the Notice of Trespass or "V-President Hold" provided any reference to the LCC Student Conduct Policy, or any other Code of Conduct or Board Policy.

41.

None of Riordan's communications with LCC Board Members and Administrators contained any threat or inference of threat, harassment, or intimidation. No Board Member, administrator, faculty, employee, agent, or student filed any complaint or allegation of concerning behavior, harassment, or threat against Riordan.

42.

To date, LCC has not provided Riordan any prior notice or hearing regarding his de facto expulsion from LCC.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

43.

Riordan has not engaged in any threatening behavior, threatened any individual or any individual associated with LCC, and has not behaved in a manner that a reasonable person would consider threatening or harassing.

44.

Riordan has engaged in protected First Amendment speech in communicating with the members of the LCC Board and LCC administration concerning the matter of public interest, policies, and decisions of the Board and LCC's administration.

**FIRST CLAIM FOR RELIEF**

(42 USC § 1983 – First Amendment Retaliation)
Against All Defendants in their
Official and individual capacities

45.

Plaintiff alleges and incorporates by reference paragraphs 4 through 44 above.

46.

Under the First Amendment to the U.S. Constitution, Riordan enjoys freedom of speech to engage in political speech and discourse including criticism of LCC decisions to cut programs, matters of public concern, speaking at Board meetings, emailing Board members and administrators, and speaking with individual Board members.

47.

Defendants actions in trespassing and preventing Riordan from attending LCC were taken in retaliation for Riordan's exercise of his First Amendment freedoms.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

48.

Defendants failed to state any reasons or bases for denying him registration until 2099 or trespassing from LCC's physical campuses, and Defendants' actions were pretextual and had no rational basis, being against stated LCC policies.

49.

Defendants actions would chill a reasonable person from continuing to engage in constitutionally protected activity. Defendants' acts did, in fact, chill Riordan from continuing to engage in public speech and attending a public community college based on speech.

50.

Because the law is clearly established in this area, and because Defendants had fair warning that trespassing and blocking registration (de facto expulsion) from a public college in retaliation for the exercise of First Amendment freedoms is unconstitutional, Defendants are liable, and the individual Defendants are liable in their individual and official capacities, for violating Riordan's First Amendment rights.

51.

The denial of constitutional rights is irreparable injury per se, and Riordan is entitled to declaratory and injunctive relief.

52.

Pursuant to 42 USC § 1988, Riordan is entitled to an award of his attorney fees and costs incurred in this action.

53.

Riordan is entitled to an award of punitive damages from the individual Defendants to punish and deter them and others from similar conduct in the future.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

**SECOND CLAIM FOR RELIEF**

(42 USC § 1983 – Procedural and Substantive Due Process)
Against All Defendants in their
Official and individual capacities

54.

Plaintiff alleges and incorporates by reference paragraphs 4 through 53 above.

55.

The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived of life, liberty or property without due process of law.

56.

Students at public community colleges enjoy protected property interests in their education such that due process must be afforded to them prior to the denial of those interests. At a minimum, this includes notice and an opportunity to be heard. *See Goss* v. *Lopez,* 419 U.S. S6S, S74 (1975); *Bd. of Curators* v. *Horowitz,* 435 U.S. 78, 86 (1978).

57.

At no time have Defendants provided Riordan with these essential rights.

58.

Because the law is clearly established in this area, and because Defendants had fair warning that denying Riordan the right to a public community college education, as well as a fair and open hearing prior to expelling him from LCC was unconstitutional, Defendants are liable for violating Riordan's rights protected by the Fourteenth Amendment, and the individual Defendants are liable in their individual and official capacities.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

59.

The denial of constitutional rights is an irreparable injury *per se,* and Riordan is entitled to declaratory and injunctive relief. In addition, Riordan is entitled to damages to be determined by a jury.

60.

Pursuant to 42 USC § 1988, Riordan is entitled to an award of his attorney fees and costs incurred in this action.

61.

Riordan is entitled to an award of punitive damages from the individual Defendants to punish and deter them and others from similar conduct in the future.

**THIRD CLAIM FOR RELIEF**

(42 USC § 1983 – First Amendment Overbreadth Challenge)
Against All Defendants in their Official Capacity

62.

Plaintiff alleges and incorporates by reference paragraphs 4 through 61 above.

63.

LCC's "Trespass Notice" Policy is facially unconstitutional because it gives complete discretion to Director Rupp, Dean Yeh, Vice President Joyce, and the remaining Defendants to punish protected speech for no legitimate reason.

64.

LCC punished Riordan for his First Amendment speech when it issued a Trespass Notice for unknown reasons, or in unlawfully trespassing Riordan from LCC campuses in an arbitrary



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

or discriminatory manner for inquiring, communicating, and participating in college and LCC Board affairs, policies, and decisions.

65.

President Bulger is the chief executive officer in charge of LCC. President Bulger manages and directs all of LCC under the policies and regulations established by the Board. President Bulger is responsible for administering and enforcing policies and regulations relating to the operation of LCC, including those that directly resulted in the deprivation of Riordan and other LCC students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

66.

Vice Presidents Tinkham and Joyce, Dean Yeh, and Director Rupp possess administrative and enforcement authority over LCC's Trespass Notice and Registration policies and are responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Riordan's constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

67.

LCC Board Members "shall be responsible for the general supervision and control of any and all community colleges operated by the district" including "enact[ing] rules for the government of the community college, including professional personnel and other employees and students of the community college." ORS 341.290 LCC's Board and its Members are responsible for the deprivation of Riordan's constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

68.

The denial of constitutional rights is an irreparable injury per se. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

69.

By suppressing Riordan's constitutionally protected speech, Defendants are inflicting an ongoing irreparable harm upon him.

70.

Riordan has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment Rights.

71.

Without declaratory and injunctive relief from this Court, Riordan will suffer continuing and irreparable harm indefinitely. In addition, Riordan is entitled to damages to be determined by a jury.

72.

Pursuant to 42 USC § 1988, Riordan is entitled to an award of his attorney fees and costs incurred in this action.

**FOURTH CLAIM FOR RELIEF**

(42 USC § 1983 – First Amendment Void for Vagueness)
Against LCC

73.

Plaintiff alleges and incorporates by reference paragraphs 4 through 72 above.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

74.

LCC's "Trespass Notice" Policy is unconstitutionally void because an "individual's behavior is disruptive to campus operations" does not allow a person of ordinary intelligence a reasonable opportunity to know what is prohibited. This is especially true here, where the behavior was engaging in speech and communications regarding LCC and Board programming decisions.

75.

LCC punished Riordan for his First Amendment speech when it issued a Trespass Notice for unknown reasons, or in unlawfully trespassing Riordan from LCC campuses in an arbitrary or discriminatory manner.

76.

LCC's arbitrary and discriminatory use of its Trespass Notice Policy had a chilling effect on Riordan in that he can no longer enter campus, register for classes, attend LCC, opine on Board decisions, access higher education, or participate in college as guaranteed by LCC's policies.

77.

Because the law is clearly established in this area, and because LCC had fair warning that its Trespass Notice and its use is subject to arbitrary and discriminatory abuse LCC is liable for violating Riordan's rights protected by the First and Fourteenth Amendments.

78.

The denial of constitutional rights is an irreparable injury *per se,* and Riordan is entitled to declaratory and injunctive relief. In addition, Riordan is entitled to damages to be determined by a jury.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

79.

Pursuant to 42 USC § 1988, Riordan is entitled to an award of his attorney fees and costs incurred in this action.

**FIFTH CLAIM FOR RELIEF**

(Breach of Contract)
Against LCC

80.

Plaintiff alleges and incorporates by reference paragraphs 4 through 79 above.

81.

Riordan has performed all conditions precedent to his contract with LCC.

82.

LCC offered admission to Riordan which he accepted and then he undertook a course of study on its campuses.

83.

The contract between LCC and Riordan consists of admission or enrollment agreements, Code of Conduct, Policies, and regulations which were made available to Riordan and to which he agreed and relied upon for obtaining an education from LCC.

84.

LCC breached its contract with Riordan in the following particulars:

a. By denying the "Freedom of Inquiry and Expression" including opportunities to express views critical of LCC's Board;

b. By denying "Public Participation at Board of Education Meetings" including the denial of opportunities for public comment, feedback, and issues of concern;



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

c. By denying admission to Riordan;

d. By denying access to LCC's campuses and classes for expressing opinions publicly and privately;

e. By denying access to LCC's facilities;

f. By denying participation in College Policies;

g. By abridging the right to distribute handouts; and

h. By arbitrarily issuing a Trespass Notice without basis or evidence showing disruptive behavior to campus operations.

85.

As a natural and necessary result of LCC's breach of contract, Riordan is damaged by loss of his education, loss of future income, and loss of the benefit of the bargain in an amount to be proved at trial.

86.

Pursuant to ORS 20.082 and 20.096 Riordan is entitled to an award of his attorney fees and costs incurred in this action.

**SIXTH CLAIM FOR RELIEF**

(Breach of Good Faith and Fair Dealing)
Against LCC

87.

Plaintiff alleges and incorporates by reference paragraphs 4 through 86 above.

88.

LCC agreed and is bound to provide an educational environment that allows for the discussion and expression of all views limited only by civil and criminal law, provides for



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

students to freely express their views on LCC policy and matters of general interest, allows for the distribution of handouts and publications, and restricts the arbitrary and discriminatory use of Trespass Notices that do not infringe on the First Amendment.

89.

LCC breached its duties of good faith and fair dealing as alleged above and incorporated herein, by failing to carry out its policies and contractual obligations and the performance of its official duties in good faith and fairly:

a. By denying Riordan the "Freedom of Inquiry and Expression" including opportunities to express views critical of LCC's Board;

b. By denying Riordan "Public Participation at Board of Education Meetings" including the denial of opportunities for public comment, feedback, and issues of concern;

c. By denying access to LCC's campuses and registration for classes for expressing opinions publicly and privately;

d. By denying Riordan participation in College Policies;

e. By abridging Riordan's right to distribute handouts; and

f. By arbitrarily issuing Riordan a Trespass Notice without basis or evidence showing disruptive behavior to campus operations.

90.

As a direct, proximate, and foreseeable result of LCC's bad faith, Riordan suffered economic damages including the loss of education opportunities, and the loss of future income in an amount to be proved at trial.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

**SEVENTH CLAIM FOR RELIEF**

(Declaratory Judgment 28 USC § 2201, et seq.)

91.

Plaintiff alleges and incorporates by reference paragraphs 4 through 90 above.

92.

As described herein, Riordan has established a violation of his First and Fourteenth Amendment rights and request a declaration thereof.

93.

Riordan requests that Lane Community College and its respective Board Members, employees, and agents take immediate steps to adhere to the requirements of the First and Fourteenth Amendment to the U.S. Constitution by effectuating the following:

a. Lane Community College and its Board and their agents shall change and/or supplement any written policy, official practice, or training they give to their employees and agents, to ensure that those engaging in political speech, or speech critical of the Board and its specific Board Members are not trespassed from LCC's campuses and barred from registering for classes;

b. Lane Community College modify its Trespass Notice Policy to include a mandate that specific instances of behavior must be documented as expressly against the Student Code of Conduct with notice provided to the trespassed individual with an opportunity for a hearing; and

c. Lane Community College and their agents shall change or supplement any written policy, official practice, or training it gives to their employees and agents, to ensure those engaging in political speech, or speech critical of the Board and its specific Board Members are given notice and a hearing prior to the deprivation of attending college.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

94.

Pursuant to 42 USC § 1988, Richard Riordan is entitled to an award of his attorney fees and costs incurred in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. An order and judgment declaring that:

a. Defendants' conduct violated the First and Fourteenth Amendments of the U.S. Constitution by trespassing Riordan from all its properties;

b. Defendants' conduct violated the First and Fourteenth Amendments of the U.S. Constitution by denying Riordan the ability to register and attend classes at LCC until 2099;

b. Defendants' Trespass Notice Policy is void for vagueness;

c. Defendants' Trespass Notice Policy is unconstitutionally overbroad;

d. A permanent injunction restraining LCC Trespass Notice policy as applied to Riordan;

e. A permanent injunction restraining LCC from barring Riordan from registering for classes prior to 2099.

2. Damages compensating Richard Riordan for his injuries, including but not limited to economic and non-economic damages;

3. Where applicable, an award of punitive damages consistent with the above claims against Defendants in amounts to be determined at trial;



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

4. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, ORS 20.082, and ORS 20.096; and

5. An award of such other and further relief as the Court deems equitable and just.

DATED this 31st day of August, 2026.

THE BRAGUE LAW FIRM

By ______________________________
Kevin C. Brague, OSB No. 050428
Attorney for Plaintiff



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243