**Kevin C. Brague, OSB No. 050428**
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**RICHARD RIORDAN**,

Plaintiff,

v.

**LANE COMMUNITY COLLEGE**, by and through the LANE COMMUNITY COLLEGE BOARD OF EDUCATION; **JESSE MALDANADO**, individually and in his official capacity as a Board Member; **KEVIN ALLTUCKER**, individually and in his official capacity as a Board Member; **JULIE WEISMANN**, individually and in her official capacity as a Board Member; **STEVE MITAL**, individually and in his official capacity as a Board Member; **DR. STEPHANIE BULGER**, individually and in her official capacity as President of Lane Community College; **DR. SHELLEY TINKHAM**, individually and in her official capacity as Vice President of Academic Affairs at Lane Community College; **DR. COLMAN JOYCE**, individually and in his official capacity as Vice President of Student Services at Lane Community College; **CARL YEH**, individually and in his official capacity as Dean of Student Engagement at Lane Community College; **LISA RUPP**, individually and in her official capacity as Director of Public Safety & Emergency Preparedness at Lane Community College;

Defendants.

Case No.

**DECLARATION OF RICHARD RIORDAN IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT**

I, Richard Riordan, declare as follows:

1. I make this declaration based on personal knowledge and am competent to testify to the same.

2. I graduated from high school in 2022.

3. I enrolled as a student at Lane Community College ("LCC") and began taking classes in the Winter term 2023 and continued to enroll and take classes at LCC nearly every following term.

4. I joined the Army Reserves and completed his basic combat training at Ft. Jackson, South Carolina in 2025.

5. I have become more aware and involved in local politics and LCC governance by its administration and Board Members.

6. I am familiar with some of LCC's adopted policies as related to students, its Board, and operations including the following:

LCC's Policy "Freedom of Inquiry and Expression" states in relevant part:

> Lane Community College serves college learners by providing programs of learning that enable students to pursue and achieve their educational and vocational goals. Free inquiry and expression are indispensable to the pursuit of these objectives. The transmission of knowledge, the search for truth and the development of the student depends upon appropriate opportunities and conditions in the classroom, on the campus and in the community. In order for the college to provide conditions that are conducive to the effective performance of its purpose, it acknowledges a commitment to those purposes and to the principles of democratic freedom for itself and others.
>
> Discussion and expression of all views within the college shall be limited only by civil and criminal law.

See, Exhibit 1.

LCC's Board Policy 2345 "Public Participation at Board of Education Meetings" states:



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

> The Lane Community College Board of Education welcomes public comment in all forms, and strives to create and promote a welcoming and accessible environment for public comment and feedback regarding agenda items and other issues of concern.
>
> There will be a time at each regularly scheduled Board of Education meeting for the general public to address the Board of Education on items on the agenda or on other matters of interest to the public.
>
> Members of the public may address the Board of Education either through written communications or by speaking during a Board of Education meeting.
>
> Persons wishing to speak shall do so at the time designated at the meeting for public comment. At the discretion of a majority of the Board of Education the time allotment for public comment at any one board meeting may be increased or decreased. LCC students will be prioritized to speak first. Speakers will generally be allotted 3 minutes to provide their testimony. If twenty (20) or more individuals sign up to speak, the time allotted for each speaker shall be limited to two (2) minutes, unless a majority of the Board of Education votes to authorize a different time limit. Written communications submitted to the Board of Education will be included in the board packet if they are received at least twenty four (24)hours prior to the board meeting.
>
> Other expectations or guidelines for public comment to the Board of Education may be articulated in the board's operating procedures.
>
> Claims for damages are not considered communications to the Board of Education under this policy, but shall be submitted to Lane Community College.

See, Exhibit 2.

LCC's Policy "Student Rights and Responsibilities" states, in relevant part:

> <u>Freedom of Access to Higher Education</u>
>
> Lane Community College is open to all persons who are qualified according to its admission and good standing requirements. Anyone age 18 or older may enroll. No high school diploma is necessary. Individuals younger than 18 may attend if they obtain approval from their high school principal or if they have already received their high school diploma. Community education classes generally are open to anyone 16 or older.
>
> Under no circumstances will an applicant be denied admission to the college because of age; sex; race; color; religion; physical or mental disability; national origin; marital status; sexual orientation; pregnancy; veteran's status; familial relationship; expunged juvenile record; association with anyone of a particular race, color, sex, national origin; nor will preference for admission be based on economic status.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Freedom of Inquiry and Expression

Students and student organizations will be free to examine and discuss all items of interest and to express opinions publicly and privately. Students will always be free to support causes by orderly means, in ways that do not disrupt the operation of the institution or violate college policies and procedures.

Use of Facilities

The facilities and services of the college will be open to all of its enrolled students, provided the facilities and services are used in a manner appropriate to the academic community and incompliance with college procedures. Student Life and Leadership Development reserves tablespace and assists student organizations in scheduling space with the college. See also Facilities: Use in General.

.

Student Participation in College Policies

Students are free to express their views, individually and collectively, on issues of institutional policy and on matters of general interest to the student body. Student representatives are welcome on college committees and councils, and the ASLCC president represents student interests to the board.

Distribution of Literature

First Amendment freedom of the press is applicable to the campus of Lane Community College. Students and the distribution of off-campus publications are protected on the main campus and outreach centers. Distribution may be restricted only if it can be shown that such activity would cause a disturbance or disruption of normal college activities. Materials to be posted require authorization for such distribution from the director of Student Life and Leadership Development. Once authorized, the distribution will take place in the prescribed locations on campus, should not disrupt the normal operation of the institution and should not cause a litter problem on the campus.

In case a student, employee or organization is denied the right to distribute materials on campus, the decision is subject to appeal. All appeals or complaints are subject to the student complaint procedure.

The college reserves the right to designate specific areas for the distribution of printed materials. A listing of these areas is maintained by the director of Student Life and Leadership Development on the main campus and by the designated building administrator at each of the following outreach centers: Downtown Center, LCC at Florence and LCC at Cottage Grove. See also Distribution of Literature.

See, Exhibit 3.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

LCC's "Student Code of Conduct" states, in relevant part:

> 1. Disruptive Behavior. Substantial disruption of College operations including obstruction of teaching, research, administration, other College activities, and/or other authorized non-College activities which occur on campus;
>
> a. Note: In order to preserve the academic integrity of classroom environments, and/or College functions, interim actions may be imposed on individuals engaging in disruptive and/or unsafe behavior. At the discretion of an employee, students may be removed from a class, room, or space for one day or session prior to a conduct conference.
>
> b. With permission of the employee, the student may return to the class, room, or space after the one day or session. The employee may also file an incident report.
>
> c. If the employee believes the student's behavior warrants longer removal from the class, room or space, the employee must file an incident report documenting the alleged violation of the Student Code of Conduct and justification for longer removal. Students will be notified of the date, time, and location of the conduct conference, and the student cannot return to the room or space until notice from the Executive Dean of Student Affairs or the Conduct Resolution Administrator.

See, Exhibit 4.

LCC's Policy "Trespass Notice" states, in relevant part:

> 1) When an individual has a relationship with the college (student or employee) and the individual's behavior is disruptive to campus operations or poses a risk to the campus, a Public Safety Officer may require the individual to leave for the day (Temporary Trespass Notice). In this case the person (student or employee) will be referred to the appropriate administrative process for follow up when they return to the campus.
>
> Such temporary notices may be extended until arrangements for due process are established, when the safety of campus members is at risk.
>
> 2) Permanent Trespass Notices are issued for violations of college policy, the Student Code of Conduct, or Oregon or federal law for actions which pose a threat to the campus community, or which create a disruption of the college learning environment and/or college activities. Permanent Trespass Notices are typically, but not always, issued to persons who are not affiliated with the college.
>
> Persons who violate the Trespass Notice will be subject to arrest and prosecution for criminal trespass as provided by Oregon Revised Statutes 164.245.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

> Campus members are notified in a specific and individual case-by-case manner about trespassed persons. Notification is given when the safety of others is obviously compromised by the potential presence or return to campus of an individual. Notifications may be generated by Public Safety or by the Threat Assessment Team, or by other college officers or representatives in collaboration with Public Safety, in incidents where a concern for campus safety is identified.

See, Exhibit 5.

LCC's Academic Catalog states:

> If you fail to pay your account, the college may take any or all of the following actions:
>
> […]
>
> Students will be mailed a final notice for accounts that are overdue before the college assigns them to a collection agency that reports them to a credit bureau. The collection agency will add additional collection fees, court and attorney costs to account.

See, Exhibit 6.

7. On or about February 1, 2026 I emailed members of the LCC Board and LCC President Bulger to discuss renewal of President Bulger's contract instead of having her contract renewal on the consent agenda of the Board meeting. See, Exhibit 7.

8. On or about March 18, 2026 LCC announced its decision to suspend the Criminal Justice and Health Information Management (HIM) programs at its Board meeting. See, Exhibit 8.

9. On or about March 31, 2026 myself and other students spoke at the Board meeting during the Public Comment section of the meeting. I voiced my criticism of the decision to suspend the HIM Program and cited to LCC citing the use of misleading data, a lack of transparency, professionalism in that students were not informed, and how these decisions impact both credibility and student trust in the college.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

10. A faculty member of LCC also spoke out against LCC's Board's decision to suspend the HIM Program.

11. On or about April 17, 2026 I wrote an email directly to LCC Vice President of Academic Affairs Shelley Tinkham where I stated that the graduation data of the HIM Program presented to the Board was inaccurate, asked if it was done by incompetence or by design, stated that she was cherry picking data to mislead the public, and asked her if she was going to correct the inaccurate statement about the number of graduates of the HIM Program at LCC. See, Exhibit 9.

12. VP Tinkham responded that the information presented to the Board was accurate. I further responded to VP Tinkham with her transcribed presentation and the data showing her presentation was inaccurate. *Id*.

13. On or about April 20, 2026 I emailed all Board members and President Bulger leveling criticisms against the Board about not being involved in college operations, not politicizing the board, and other substantially similar policy or board matter related comments. See, Exhibit 10.

14. On or about April 22, 2026 I spoke in defense of the HIM Program during the public comment portion of an LLC Board meeting. I spoke about the lack of transparency, the harm to students, and the hypocrisy of administration. The LCC Board then voted to suspend the Criminal Justice and HIM Programs.

15. On or about April 27, 2026 I received an email from "academicadvising@lanecc.edu" and to "riordanr@my.lanecc.edu" about academic advising. There was no indication or statement that it was a LCC campus wide mass email or not to reply,



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

and so I replied to the email. In my reply I questioned the need to meet with academic advising when programs were arbitrarily being cut. See, Exhibit 11.

16. On or about April 30, 2026 I emailed President Bulger and others criticizing the language used in LCC's FY2027 budget mitigation communications, argued that many statements rely on rhetorical framing, administrative jargon, and "spin" rather than directly addressing the real impacts of the decisions. I quoted specific phrases from the administration's message, claiming they minimized harm, and obscured accountability. See, Exhibit 12.

17. On or about May 1, 2026 I emailed the LCC Board member Jesse Maldanado, who cast the deciding vote to suspend the HIM Program, noting Maldanado's perceived political ambitions, accused him of exchanging student wellbeing for political convenience, and selling-out students. See, Exhibit 13.

18. On or about May 5, 2026 I received a text on my cell phone from LCC Dean of Student Life Carl Yeh who requested that he meet with me and LCC Public Safety Director Lisa Rupp. I then met with Dean Yeh and Director Rupp via Zoom who inquired about my interactions with college officials. I asked Dean Yeh why he texted him and Carl replied that it was for "urgency." Dean Yeh told me not to send mass emails, and then advised me that I "should be careful." I understood this to be a direct threat. In response, I requested written policies or guidelines concerning the meeting and its subject matter which Dean Yeh never provided. See, Exhibit 14.

19. To date, I have not received any guidelines or written expectations or documentation concerning this meeting from Dean Yeh, Director Rupp, or LCC.

20. I have never received any complaint, warning, letter, document, email, or other communication from any Board Member, administrator, officer, employee, or agent of LCC that



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

has indicated any threat, threatening behavior, harassment, concern, disruption to any class, meeting, Board meeting, function, event, or LCC operation.

21. On or about May 6, 2026 I emailed email LCC Board members stating that proposals to cap public comment at board meetings undermines democratic accountability by limiting opportunities for community members to voice concerns about decisions that affect their education, jobs, and futures. See, Exhibit 15.

22. On or about May 18, 21, and 26, 2026 I emailed Dean Yeh requesting confirmation that the Dean would not text him. I have not received any response from Dean Yeh. See, Exhibit 16.

23. On or about May 18, 2026 I emailed LCC Board Members, LCC Administration, several faculty members, and union respresentatives criticizing a proposal to place limits on public comment at LCC Board meetings, arguing that doing so would undermine democratic participation and accountability. I argued that elected officials have a responsibility to hear public concerns, especially when board decisions affect students, employees, educational programs, and community members, and he characterizes efforts to reduce public input as an attempt to manage criticism rather than address it. See, Exhibit 17.

24. On or about May 27, 2026 I attended the LCC Board Budget meeting. I spoke at the meeting and was critical of how Board Members ignored the student needs and even ignored the student body president. I stated that Board Members say they have values but it is like counterfeit currency.

25. After the meeting, I saw and approached Board Member Kevin Alltucker in the parking lot and discussed his priorities, his stand on student needs & college sustainability, and other topics. This conversation occurred in front of campus security who closely observed the



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

conversation. No threats, bad use of language, or complaints about inappropriate behavior were observed or made.

26. On June 2, 2026 I emailed LCC Board members, several faculty, student government representatives, LCC Administrators, and local government officials criticizing LCC Board Member Kevin Alltucker for his stance on budget cuts and program suspensions. I stated that Board Member Alltucker relied on performative, self-serving austerity rhetoric, and that Board Member Alltucker was an example of how people mistake performance for principle when the rhetoric is hiding bad judgement. See, Exhibit 18.

27. On or about June 3, 2026 I spoke at the LCC Board Budget Meeting. I stated that business-backed Board Members push for austerity measures and that this did not serve the best interests of the college, creating a public trust issue. I also distributed handouts during the meeting that stated LCC Board Members Alltucker's and Julie Weismann's campaigns were paid for by Lane County big business. My handout detailed the donations to their campaigns and Political Action Committees, which data came from public records (see, https://secure.sos.state.or.us/orestar/gotoPublicTransactionSearch.do; Kevin Alltucker's PAC ID: 22605 and Julie Weismann's PAC ID: 24126). See, Exhibit 19.

28. During the June 3, 2026 Board meeting, LCC Board Member Steve Mital mentioned to co-Board Member Julie Weismann that "someone has made an allegation against you." *Id*. In response to this comment which I understood was directed at me, on June 3, 2026 I emailed to LCC Board Members the definition of "allegation" and the link to the Oregon Secretary of State Campaign finance transaction website. *Id*.

29. On June 17, 2026 I emailed Vice President Tinkham asking why individual counseling support promised to students in the HIM Program during an April 22 2026, Board



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

meeting had not yet been provided by mid-June. I also stated that many affected students did not pursue the proposed transfer pathway and claims that a significant number left college altogether, raising concerns about the impact of the FY2027 mitigation plan. I called on Vice President Tinkham to explain when the promised counseling assistance will be delivered and expresses frustration with the delay in fulfilling that commitment. See, Exhibit 20.

30. On June 25, 2026 LCC Public Safety Office (i.e. Director Lisa Rupp under the direction of Vice President Colman Joyce) emailed me a notice of trespass. It states:

> "For conduct that has disrupted Lane Community College operations, you have been trespassed. You are not allowed to return to any properties under Lane Community College control, including those it has control of during college activities. If you return, you will be subject to administrative and/or criminal prosecution." The Notice of Trespass lists seven LCC properties and campuses.

The Notice of Trespass also states:

> "If you are found in or on Lane Community College property you will be subject to arrest under Oregon Revised Statute 164.245.

See, Exhibit 21.

31. After receiving the Notice of Trespass I attempted to register for classes and discovered that a "V-President Hold" prevented my registration from June 25, 2026 until December 31, 2099. See, Exhibit 22.

32. Neither the Notice of Trespass or "V-President Hold" provided any specific reference to the LCC Student Conduct Policy, or any other Code of Conduct or Board Policy.

33. None of my communications with LCC Board Members and Administrators contained any threat or inference of threat, harassment, or intimidation. No Board Member, administrator, faculty, employee, agent, or student filed any complaint or allegation of concerning behavior, harassment, or threat against me.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

34. LCC has not provided me any prior notice or hearing regarding his de facto expulsion from LCC.

35. I have not engaged in any threatening behavior, threatened any individual or any individual associated with LCC, and has not behaved in a manner that a reasonable person would consider threatening or harassing.

**I hereby declare under the laws of the United States of America that the above statement is true and correct to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED this 28th day of August, 2026.

By s/Richard Riordan
Richard Riordan



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243