Jennifer M. Gaddis, (OSB No. 071194)
jgaddis@ghrlawyers.com
Marco G. Lohavanijaya, (OSB No. 254362)
mlohavanijaya@ghrlawyers.com
GARRETT HEMANN ROBERTSON P.C.
P.O. Box 749
Salem, Oregon 97308-0749
Tel: (503) 581-1501
Fax: (503) 581-5891
Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

**RICHARD RIORDAN**,

Plaintiff,

vs.

**LANE COMMUNITY COLLEGE**, by and through the LANE COMMUNITY COLLEGE BOARD OF EDUCATION; **JESSE MALDANADO**, individually and in his official capacity as a Board Member; **KEVIN ALLTUCKER**, individually and in his official capacity as a Board Member; **JULIE WEISMANN**, individually and in her official capacity as a Board Member; **STEVE MITAL**, individually and in his official capacity as a Board Member; **DR. STEPHANIE BULGER**, individually and in her official capacity as President of Lane Community College; **DR. SHELLEY TINKHAM**, individually and in her official capacity as Vice President of Academic Affairs at Lane Community College; **DR. COLMAN JOYCE**, individually and in his official capacity as Vice President of Student Services at Lane Community College; **CARL YEH**, individually and in his official

No. 6:26-Cv-01807-MC

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Oral Argument Hearing Set for September 23, 2026 at 1:30pm before Judge McShane

capacity as Dean of Student Engagement at Lane Community College; **LISA RUPP**, individually and in her official capacity as Director of Public Safety & Emergency Preparedness at Lane Community College ,

Defendants.

## MOTION

Defendants Lane Community College ("LCC"), Jesse Maldonado, Kevin Alltucker, Julie Weismann, Steve Mital, Dr. Stephanie Bulger, Dr. Shelley Tinkham, Dr. Colman Joyce, Carl Yeh, and Lisa Rupp (collectively, "Defendants"), by and through their attorney of record, Jennifer M. Gaddis of Garrett Hemann Roberston, P.C., submit this response to Plaintiff's Motion for Temporary Restraining Order (the "Motion"). Plaintiff's Motion improperly requests relief reserved for a preliminary injunction, a much more stringent standard than that of a temporary restraining order. Additionally, Plaintiff's motion fails to satisfy the prima facie requirements for issuance of a temporary restraining order (and, necessarily, the stricter requirements for issuance of a preliminary injunction). This response is supported by the pleadings and record already on file with the Court, the Declaration of Lisa Rupp, and the following points and authorities.

## FACTUAL BACKGROUND

Plaintiff was previously a student of LCC during the Spring 2026 semester. Rupp Decl., ¶ 3. On or about March 18, 2026, LCC announced its decision to suspend the Criminal Justice and Health Information (HIM) programs at its Board meeting. Pltf. Compl. ¶ 18. On or about March 31, 2026, Plaintiff spoke at the Board meeting during the public comment section of the meeting, raising his concerns with the decision to suspend the HIM program. Pltf. Compl. ¶ 19.

Throughout the month of April 2026, Plaintiff sent various emails to LCC District Board members voicing his concerns regarding the suspension of the HIM program. Pltf. Compl. ¶¶ 20-24.

Plaintiff attended and spoke in defense of the HIM program at the Board meeting on April 22, 2026. Pltf. Compl. ¶ 22. Prior to this meeting, on April 21, 2026, Board member and Defendant Steve

Mital expressed safety concerns to the Board, as well as Director of Public Safety and Defendant Lisa Rupp. Rupp Decl., ¶ 4, Ex. 1. These concerns were based on Plaintiff's angry and threatening conduct at the March 2026 Board meeting and Plaintiff's emails to the board members. *Id*. Around this time, LCC's Threat Assessment Team (TAT) began monitoring Plaintiff's behavior for continued threatening conduct. Rupp Decl., ¶ 6.

On May 4, 2026, while Board member and Defendant Shelley Tinkham was getting coffee with a fellow LCC administrator on campus, Plaintiff approached and accosted her in a manner by which she reportedly felt intimidated, and which unnerved her and made her feel unsafe. Rupp Decl., ¶ 7, Ex. 2. Defendant Rupp formally reported this incident on May 4, 2026, on behalf of Defendant Tinkham, as Defendant Tinkham did not feel comfortable doing so herself. Rupp Decl., ¶ 7, Ex. 2.

In response to Plaintiff's repeated threatening behaviors, both at and outside of Board meetings, Defendant Yeh organized a Zoom meeting with Plaintiff for May 5, 2026, which was attended by Defendant Yeh, Defendant Rupp, and Plaintiff. Rupp Decl., ¶ 9. At this meeting, Plaintiff was specifically asked to make appointments if he wished to speak with administrators, rather than approaching them directly. Rupp Decl., ¶ 10.

Additionally, on May 12, 2026, Defendant Rupp received a formal incident report regarding Plaintiff from Beccah Maley, an LCC employee, as well as two students from the Student Life Office at LCC. Rupp Decl., ¶ 13, Ex. 4. Ms. Maley and the two students indicated that they had been approached by Plaintiff at the Student Life Office, where Plaintiff engaged them in conversation. Rupp Decl., ¶ 14, Ex. 4. The substance of these conversations included many troubling statements regarding Board members, including comparing college leadership concerns to situations such as the Peterloo Massacre. Rupp Decl., ¶ 14, Ex. 4. Based on these conversations, the students felt concerned for Plaintiff's apparent fixation on these Board members and administration-related topics. Rupp Decl., ¶ 14, Ex. 4.

On May 18, 2026, Plaintiff sent, via email, a letter to the Board that included personal attacks against several board members, namely Defendant Alltucker. Rupp Decl., ¶ 16, Ex. 5. More concerningly, Plaintiff concluded his email with a .png image depicting a scene from the movie Shrek, in which Lord Farquaad states that "some of you may die, but it's a sacrifice I am willing to make." Rupp Decl., Ex. 5.

On May 27, 2026, after Plaintiff's threatening email was sent to the Board, Plaintiff waited outside the meeting building to confront Board members. Rupp Decl., Ex. 3. When Board members were escorted by security out of the building through another exit, he pursued them to the parking lot where he confronted them. Rupp Decl., Ex. 3. Board members, including Defendant Alltucker described him as agitated and raising his voice. Rupp Decl., Ex. 3. He also reported that he had a concern that Plaintiff might commit physical violence that placed Defendant Alltucker in a state of "heightened awareness" when Plaintiff would enter the room. Rupp Decl., Ex. 3.

On June 2, Defendant Rupp received another formal incident report from Ms. Maley and the two students involved in the May 12, 2026, report described above, regarding Plaintiff's behavior and conduct. Rupp Decl., ¶ 24. In this report, Ms. Maley reported receiving an email from the two students in which they expressed concerns about the language and content of emails they had received from Plaintiff. In the emails in question, Plaintiff uses violently charged language, including references to a "drive by shooting." Rupp Decl., ¶ 25, Ex. 8. Ms. Maley expressed her concerns regarding the frequency of these reports from students, and about the language used by Plaintiff and the time and energy he is putting into these documents. Rupp Decl., ¶ 25, Ex. 8. She also expressed concerns about the effects on the other students, as she believed it was interfering with their ability to focus on their own studies. Rupp Decl., ¶ 25, Ex. 8.

On June 16, 2026, Board member and Defendant Julie Weismann reported to Defendant Rupp that she stopped attending Board meetings in person because Plaintiff makes her feel unsafe. Rupp Decl., Ex. 3.

On June 24, 2026, Defendant Alltucker sent an email to Defendants Bulger and Rupp, in which he expressed concerns over the highly personal attacks on both Defendant Alltucker and his wife contained within Plaintiff's May 18, 2026, letter. Rupp Decl., ¶ 18, Ex. 6. He went on to state that this escalation of personal attacks, combined with the confrontation on May 27, 2026, and Plaintiff's behavior against Defendant Alltucker and several other board members, indicated a clear escalation of Plaintiff's behavior. Rupp Decl., Ex. 6. He concluded the email by stating that his "objective is not to limit anyone's right to speak or participate in public discourse," and instead that he is "increasingly concerned about [his] personal safety." Rupp Decl., Ex. 6.

Defendant Rupp interviewed multiple people, including Board members and LCC staff, who expressed concern over Plaintiff's erratic behavior. In response to the host of harassment incident reports described above, as well as Plaintiff's continued threatening actions and failure to de-escalate such actions even after the May 5, 2026 meeting with Defendants Yeh and Rupp, LCC elected to issue a trespass order to Plaintiff on June 25, 2026. Rupp Decl., ¶ 20.

The Trespass Order stated that Plaintiff had engaged in conduct that disrupted LCC operations, that the trespass covered any LCC property, and that Plaintiff would be subject to administrative and/or criminal prosecution if he returned to any of the subject properties. Compl., ¶ 38. The trespass order did not in any way prevent Plaintiff from continuing to participate in Board meetings remotely. Rupp Decl., ¶ 21.

On June 29, 2026, Plaintiff requested a Zoom link to the July 1, 2026, Board meeting. Rupp Decl., ¶ 22. The Zoom link was provided to Plaintiff that same day. Rupp Decl., ¶ 22, Ex. 7. Plaintiff was confirmed as having signed up for the July 1, 2026, Board meeting. Rupp Decl., ¶ 22.

## POINTS & AUTHORITIES

### *A. Plaintiff's Motion Seeks a Legally-Disfavored Mandatory Injunction.*

While Plaintiff's Motion is labeled as a Motion for Temporary Restraining Order, Defendants have been provided with notice and an opportunity to respond. As such, the Motion is more accurately

a request for a preliminary injunction. *See*, Fed. R. Civ. P. 65. The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Immigrant Legal Res. Ctr. v. City of McFarland*, 472 F. Supp. 3d 779, 783. Courts have recognized two distinct forms of preliminary injunctions: 1) prohibitory, which prohibits "a party from taking action and preserves the status quo pending a determination of the action on the merits," and 2) mandatory, which "orders a responsible party to take action." *Chew v. Legislature of Idaho*, 512 F. Supp. 3d 1124, 1127, citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 879 (9th Cir. 2009).

Although both temporary restraining orders and preliminary injunctions are viewed as extreme remedies only warranted in limited circumstances, "a mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Id*.

In this case, Plaintiff is not asking to preserve the status quo. Instead, Plaintiff is expressly asking for the Court to order Defendants to "allow Plaintiff to enter campus and enroll in classes." Motion, pg. 2. This would represent an affirmative order for Defendants to take action, and therefore, the request constitutes a request for a mandatory injunction.

### ***B. Plaintiff Fails to Show the Required Elements for a Preliminary Mandatory Injunction.***

Issuance of a mandatory preliminary injunction requires four elements: 1) that the moving party is likely to succeed on the merits; 2) that the moving party is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in the favor of the moving party; and 4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Generally, likelihood of success on the merits is a threshold inquiry and the most important factor. *Pacito v. Trump*, 169 F.4th 895, 919 (9th Cir. 2026). However, under the Ninth Circuit's sliding scale approach, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Id*., *quoting Shell Offshore, Inc. v. Greenpeace, Inc.*,

709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Plaintiff only moves for this preliminary injunction on First Amendment grounds, and only addresses his First, Third, and Fourth claims for relief in the Motion. Therefore, Plaintiff has not shown any required element for issuance of a preliminary injunction on the basis of his Second, Fifth, Sixth, or Seventh claims for relief.[1]

1. Plaintiff's First Amendment Violation Claims (Claims 3 and 4).

For Plaintiff's First Amendment Violation Claims (Claims 3 and 4), despite Plaintiff's arguments to the contrary, Plaintiff cannot show that he is likely to succeed on the merits.

Plaintiff correctly identifies that the applicable Board meetings are limited public fora, and that sidewalks, parks, and streets are traditional public fora. However, a parking lot is a nonpublic forum. *United States v. Kokinda*, 497 U.S. 720, 320, 110 S. Ct. 3115, 111 L. Ed. 2d 571 (1990).

For limited public fora, the government may restrict speech in the forum as long as the regulation is reasonable and viewpoint neutral, meaning it is not an effort to suppress expression merely because of the viewpoint of the speaker. *Reza v. Pearce*, 806 F.3d 497, 504 (9th Cir. 2015). The same standard is applicable to a nonpublic forum. *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of L.A.*, 764 F.3d 1044, 1049 (9th Cir. 2014). A restriction need not be the most reasonable or the only reasonable limitation; it must only be reasonable. *Id*. A restriction is considered reasonable as long as it is "wholly consistent with the [government's] legitimate interest in preserv[ing] the property... for the use to which it is lawfully dedicated." *Id*., quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 50-51, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983).

[1] There is no clearly established due process right to higher education or continued university or college enrollment. *See, e.g., Doe v. Or. State Univ.*, 614 F. Supp. 3d at 859; *Brady v. Portland State Univ.,* Case No. 3:18-cv-01251-HZ, 2019 U.S. Dist. LEXIS 145175, 2019 WL 4045652, at *4-6 (D. Or. Aug. 23, 2019); *Doe v. Univ. of Or.*, Case No. 6:17-CV-01103-AA, 2018 U.S. Dist. LEXIS 49431, 2018 WL 1474531, at *14 (D. Or. Mar. 26, 2018); *Andrews v. Treasure Valley Cmty. Coll.*, Case No. 2:19-CV-01314-SU, 2020 U.S. Dist. LEXIS 60879, 2020 WL 1678050, at *5 (D. Or. Mar. 18, 2020*); McCollough v. Portland State Univ*., No. 3:23-cv-01582-AR, 2024 US Dist LEXIS 218558, at *22-24 (D Or Oct. 25, 2024).

In this case, Defendant LCC placed a restriction on Plaintiff's speech by issuing the trespass order and prohibiting his physical access to LCC property, which would include the location of Board meetings, as well as the sidewalks and parking lots located on LCC property. However, the restriction placed on Plaintiff is reasonable under the circumstances. Plaintiff was the subject of several incident reports of harassment, and several Board members, LCC employees, and even LCC students expressed concerns about Plaintiff, ranging from concerns for his mental state to concerns over their own personal safety.

Furthermore, Plaintiff was given an opportunity to correct his threatening behavior prior to the restriction, in response to the May 5, 2026, meeting with Defendants Yeh and Rupp. Only once it was established that Plaintiff was not willing to correct this behavior was the restriction issued.

Lastly, the restriction is reasonable in that it does not bar Plaintiff from expressing his opinions at board meetings. LCC makes its Board meetings available through Zoom so that attendees can attend and participate virtually. Plaintiff's ability to attend and participate in Board meetings via Zoom was not restricted in any way.

Similarly, the restriction placed on Plaintiff's speech is viewpoint-neutral. As stated by Defendant Alltucker in his June 24, 2026, email to Defendants Bolger and Rupp the day before the trespass was issued: his "objective is not to limit anyone's right to speak or participate in public discourse," but rather that he is "increasingly concerned about [his] personal safety." Rupp Decl., Ex. 6. Plaintiff's behavior, not the content of his speech at Board meetings, warranted the issuance of the trespass order. Additionally, the fact that Plaintiff has retained his ability to participate in public discourse at Board meetings, just through virtual attendance, highlights the conclusion that the restriction was tailored to his threatening behavior, rather than to the viewpoint expressed in his speech.

2. <u>Plaintiff's First Amendment Retaliation Claim (Claim 1).</u>

As stated in Plaintiff's Motion, a claim for First Amendment retaliation must show that: 1)

the plaintiff was engaged in a constitutionally-protected activity; 2) the defendant's actions would have chilled a person of ordinary firmness from continuing to engage in the protected activity; and 3) the protected activity was a *substantial or motivating factor* in the defendant's conduct. *L.A. Press Club v. Noem*, 171 F.4th 1179, 1188 (9th Cir. 2026) (emphasis added).

In this case, there is extensive evidence that the basis for the issuance of the trespass order is the numerous harassment reports and complaints that were filed against Plaintiff for his conduct, rather than any concerns about the content of his speech. Documented incidents of harassment are clearly a violation of the applicable LCC code of conduct policies. Defendant Alltucker's comments in his June 24, 2026 email are particularly telling and demonstrate a clear intent to protect personal safety, a motivation echoed by several other board members and staff.

Plaintiff cannot provide any evidence, beyond conclusory allegations, that the decision to issue the trespass order was based in any way on Plaintiff's speech at board meetings, let alone that this alleged basis was a substantial and motivating factor in the decision to issue the trespass order, as is required for a showing of First Amendment Retaliation.

3. <u>Neither Claim Can Satisfy the Ninth Circuit's Sliding-Scale Approach.</u>

Even under the Ninth Circuit's sliding scale approach, Plaintiff is not likely to succeed on the merits because he cannot demonstrate that injunctive relief is in the public interest, and therefore cannot show that the balance of equities is in favor of Plaintiff.

Case law in the Ninth Circuit has consistently upheld speech restrictions for the purpose of ensuring public safety. *United States v. Griefen*, 200 F.3d 1256 (9th Cir. 2000). This case is no different. Defendant LCC issued the trespass order due to safety concerns created by Plaintiff's behavior. Therefore, the issuance of a preliminary injunction would result in an increased safety risk, which is not in the public interest.

Plaintiff claims that he has been subjected to "wholesale denial of the ability to exercise First Amendment rights." Motion, p. 17. This is factually incorrect. As stated above, Plaintiff has retained

the right to speak and participate in all Board meetings virtually. As such, the minor restriction on Plaintiff's speech is greatly outweighed by the public safety concerns created by Plaintiff's physical presence on LCC property. As such, Plaintiff cannot demonstrate that the balance of hardships sharply turns in favor of Plaintiff, as required under the Ninth Circuit's sliding scale approach.

## CONCLUSION

For the foregoing reasons, Plaintiff has not, and cannot, satisfy the requirements for the issuance of a mandatory preliminary injunction. As such, Defendants respectfully request that this Court deny Plaintiff's Motion for Temporary Restraining Order in its entirety.

DATED September 15, 2026.

GARRETT HEMANN ROBERTSON P.C.

*s/ Jennifer M. Gaddis*

Jennifer M. Gaddis, (OSB No. 071194)
jgaddis@ghrlawyers.com
Marco G. Lohavanijaya, (OSB No. 254362)
mlohavanijaya@ghrlawyers.com
Of Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** on the date indicated below,

☐ Via First-Class Mail with postage prepaid
☐ Via Facsimile Transmission
☒ Via Electronic Filing Notice
☒ Via Email
☐ Via Hand Delivery
☐ Via Overnight Delivery

to the following person(s) a true copy thereof, contained in a sealed envelope (if other than by facsimile transmission), addressed to said person(s) at their last known addresses indicated below:

Kevin Brague, OSB No. 050428
The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
P: 503.922.2243
kevin@braguelawfirm.com
Of Attorneys for Plaintiff

DATED September 15, 2026.

GARRETT HEMANN ROBERTSON P.C.

*s/ Jennifer M. Gaddis*

Jennifer M. Gaddis, (OSB No. 071194)
jgaddis@ghrlawyers.com
Marco G. Lohavanijaya, (OSB No. 254362)
mlohavanijaya@ghrlawyers.com
Of Attorneys for Defendants