**Kevin C. Brague, OSB No. 050428**
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **RICHARD RIORDAN**,<br><br>Plaintiff,<br><br>v.<br><br>**LANE COMMUNITY COLLEGE**, by and through the LANE COMMUNITY COLLEGE BOARD OF EDUCATION; **JESSE MALDANADO**, individually and in his official capacity as a Board Member; **KEVIN ALLTUCKER**, individually and in his official capacity as a Board Member; **JULIE WEISMANN**, individually and in her official capacity as a Board Member; **STEVE MITAL**, individually and in his official capacity as a Board Member; **DR. STEPHANIE BULGER**, individually and in her official capacity as President of Lane Community College; **DR. SHELLEY TINKHAM**, individually and in her official capacity as Vice President of Academic Affairs at Lane Community College; **DR. COLMAN JOYCE**, individually and in his official capacity as Vice President of Student Services at Lane Community College; **CARL YEH**, individually and in his official capacity as Dean of Student Engagement at Lane Community College; **LISA RUPP**, individually and in her official capacity as Director of Public Safety & Emergency Preparedness at Lane Community College;<br><br>Defendants. | Case No. 6:26-CV-01807-MC<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT** |

**REPLY**

Defendants do not acknowledge barring Plaintiff from registering for classes until 2099 as retaliation for Plaintiff's protected First Amendment activities and without notice or hearing. Similarly, Defendants fail to proffer any evidence of an actual threat or identify behavior or statements by Plaintiff that are not protected by the First Amendment.

Defendants thus concede that Plaintiff is likely succeed on the merits, suffers an irreparable harm, the equities tips in Plaintiff's favor, and the injunction is in the public interest. Therefore, an injunction should issue allowing Plaintiff to register for and attend classes on campus at Lane Community College ("LCC").[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**SUPPLEMENTAL STATEMENT OF FACTS**

Plaintiff is passionate about real issues that effect people. Supp. Decl. Riordan. Friends and acquaintances have commented to Plaintiff that he is socially awkward, that his "resting face" appears angry, and his passion is sometimes confused with being behaviorally or emotionally elevated. *Id*.

Plaintiff does not own or possess a firearm. *Id*.

During the May 5, 2026 Zoom meeting with Lisa Rupp and Carl Yeh provided limited guidance to Plaintiff in the form of "don't respond to mass emails" and "instead try making appointments with administrators." They did not state that Plaintiff had violated any code of conduct, or gave me any specific instance of conduct or behavior that Plaintiff should refrain from talking to people on campus. *Id*.

---

[1] Defendants note that the higher standard of a preliminary injunction should apply here. That may be true, but Plaintiff is seeking immediate relief from the current and ongoing harm he is experiencing by Defendants' denying him an education.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Plaintiff, to his knowledge, has never been the subject of a student conduct hearing, or received any notice of any violation of the code of student conduct. *Id*.

Plaintiff frequently uses pop culture and historical references to make a point, a comparison, employ sarcasm or irony, or metaphor. As included in the record (Plaintiff's Ex. 17 p. 4, and Defendants' Ex. 3, p.2), the animation still from the Shrek Movie taken in the context of the paragraph illustrates Plaintiff's observation of the administration cutting programs of others while protecting their own administration. Decl. Riordan, Ex. 17, p. 4.

Similarly, Plaintiff's difficulty in expressing his own shortcomings in coherently writing described his writing as "organized like a drive-by shooting." *Id*. This is a self referential comment. Plaintiff did compare Defendants with the Peterloo Massacre to illustrate Defendants' obvious displeasure of public participation.[2] *Id*.

Plaintiff did speak with Defendant Alltucker in the parking lot, but remained about fifteen feet from him during the conversation and was not lurking or hiding in the bushes. Plaintiff found Defendant Alltucker's responses to be dismissive, but at no time did Defendant Alltucker state he was uncomfortable, ask Plaintiff to leave or make an appointment, or state any displeasure with the conversation. Supp. Decl. Riordan. Plaintiff did not make any statements concerning Defendant Alltucker's wife or family. *Id*.

Plaintiff frequently tells people to stay hydrated in hot weather simply because it is something he does out of courtesy and caution. *Id*.

---

[2] "The Peterloo Massacre took place at St Peter's Field, Manchester, England, on Monday 16 August 1819. Eighteen people were killed and 400–700 were injured when the cavalry of the Yeomanry charged into a crowd of around 60,000 people who had gathered to demand the reform of parliamentary representation." See, https://en.wikipedia.org/wiki/Peterloo_Massacre, accessed on September 17, 2026.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

For the duration in which Plaintiff attended board meetings Plaintiff has never seen Julie Weismann attend said meetings in person. *Id*.

Plaintiff is not obsessed about Defendants, but is standing up for and against the cutting of programs at LCC. *Id*.

Plaintiff believes that Defendants were reading emails and monitoring communications as had been reported in August 2025 and substantiated by the Employment Relations Board of the State of Oregon as an Unfair Labor Practice. Supp. Decl. Riordan, Ex. 1, (Case No. UP-060-23, July 22, 2025 Findings and Order)["The College violated ORS 243.672(1)(a) by engaging in surveillance of the faculty listserv"]. See also, https://www.kezi.com/news/three-judge-panel-says-lane-community-college-violated-workers-rights-in-july-ruling/article_c008744b-6079-474b-a279-93af3e992fb1.html (accessed September 17, 2026).

Registration for LCC's Fall Term classes is underway and the term begins on September 28, 2026. Plaintiff may already be prejudiced in undertaking classes due to space and enrollment from late registration.

**ARGUMENT**

A. Legal Standard for Issuance of a Preliminary Injunction.

Plaintiff and Defendants agree that the legal standard for the requested relief is found in Fed. R. Civ. P. 65 and *L.A. Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir 2026) citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) and an application of an alternative showing is found in *L.A. Press Club v. City of L.A.*, 790 F Supp 3d 838, 845 (CD Cal 2025) citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Plaintiff and Defendants diverge on the legal issue of whether or not Plaintiff's requested relief seeks to preserve the status quo ("prohibitory injunction"), or orders a responsible party to take action ("mandatory injunction"). Defendants argue that Plaintiff seeks a mandatory injunction which requires a showing of extreme or very serious damage, or where the injury is capable of compensation in damages. See, e.g. *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir 2022). None of the facts present in *Snyder* or the cases cited by Defendants concern education and are distinguishable on the facts. Moreover, Plaintiff is not asking for Defendants to take affirmative action (such as violating the law or recalling products).

Plaintiff seeks a prohibitory injunction to maintain the status quo as an enrolled (and hopefully attending) college student at Lane Community College. The Ninth Circuit has long held that the "basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. United States Dist. Court Cent. Dist.*, 840 F2d 701, 704 (9th Cir 1988). The *Chalk* case is illustrative of a preliminary injunction maintaining the status quo.

In *Chalk*, the plaintiff was a certified teacher of hearing-impaired students in the Orange County Department of Education. *Id*. at 703. In February 1987 Chalk was diagnosed as having AIDS and was barred from teaching in the classroom and assigned to an administrative position. *Id*. The Department of Education placed Chalk on administrative leave for the remainder of the school year. *Id*. In August 1987 Chalk sought a preliminary injunction seeking an order to re-assign and return him to the classroom. *Id*. at 704. The District Court denied Chalk's preliminary injunction, and based on an expedited appeal, the Ninth Circuit overturned the denial and directed the District Court to enter a preliminary injunction as sought by Chalk. *Id*. at 712.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

The Ninth Circuit Court of Appeals did not characterize Chalk's preliminary injunction as prohibitory or mandatory, but the facts and the law as applied show that the status quo was the pre-injury relationship of the parties. Thus, Defendants' argument that Plaintiff here seeks a mandatory injunction is misleading. The case relied upon by Defendants, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009) is not applicable as it is a trademark infringement case seeking the recall of products. This requires an affirmative act which differs greatly from the requested relief here of keeping the status of quo of an enrolled student attending his local community college during the course of this litigation.

B. Plaintiff is Likely to Succeed on the Merits.

The gravamen of Plaintiff's Complaint is that Defendants retaliated against Plaintiff for exercising his First Amendment rights. In so doing, Defendants also violated his Fourteenth Amendment rights to due process, and breached their own contract with Plaintiff.

More particularly, Lane Community College Policy "Freedom of Inquiry and Expression" states:

> Lane Community College serves college learners by providing programs of learning that enable students to pursue and achieve their educational and vocational goals. Free inquiry and expression are indispensable to the pursuit of these objectives. The transmission of knowledge, the search for truth and the development of the student depends upon appropriate opportunities and conditions in the classroom, on the campus and in the community. In order for the college to provide conditions that are conducive to the effective performance of its purpose, it acknowledges a commitment to those purposes and to the principles of democratic freedom for itself and others.
>
> Discussion and expression of all views within the college shall be limited only by civil and criminal law.

Decl. Riordan, Ex. 1.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Defendants argue that a restriction was placed on Plaintiff for exercising his free speech rights on campus. Defendants' position contradicts its own policy. Defendants' policy, quoted above, applies to "the classroom, on the campus and in the community." Lane Community College free speech policy does not distinguish and purposefully omits distinctions between traditional and limited public fora.

This determinative factor wholly distinguishes the present facts from what the Supreme Court decided in *United States v. Kokinda*, 497 US 720, 730, 110 S Ct 3115, 3121, 111 LEd2d 571, 583 (1990). The *Kokinda* case was about Democratic party solicitations on a U.S. Postal Service property sidewalk. *Id*. It did not concern any parking lot. More importantly, the U.S. Postal Service specifically adopted regulations for expressive activity limited to public notices on designated bulletin boards. *Id*. The postal service did not open its property, generally, to all First Amendment activity. *Id*.

Contrary to *Kokinda*, Defendant LCC has expressly opened its campus, including its sidewalks and parking lots, to all First Amendment activities.

Based on Defendants own Policy, its campus, including its parking lots, are public forums which allow for political speech to occur concerning matters of public interest about college programs and cuts. Plaintiff engaged in protected First Amendment speech by discussing college related topics with college administrators and Board Members on campus.

Defendants claim that Plaintiff was given an opportunity to correct his "threatening behavior" during the May 5, 2026 Zoom meeting with Defendants Rupp and Yeh. Defendants' arguments skirt the fact that Defendants never informed Plaintiff of what he said, to whom, or what others perceived of his behavior, or most importantly what criminal code or student code of conduct he violated. Moreover, by Defendants' own admission they only counseled him to



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

make appointments if he wished to speak with administrators. Decl. Rupp. ¶10. Defendants never told Plaintiff that he could not attend Board Meetings or speak with elected Board Members about LCC, their program cuts, and attitudes towards LCC students.

Defendants do not argue that their May 5, 2026 Zoom meeting constituted any kind of due process hearing. Factually and legally such an argument is foreclosed because a student facing college discipline must be given notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker. *Doe v. Univ. of Cincinnati*, 872 F3d 393, 399-400 (6th Cir 2017). Defendants did not afford Plaintiff even minimal due process. *Id*. at 399 ["State universities must afford students minimum due process protections before issuing significant disciplinary decisions."].

Minimal due process of notice and a hearing have long been recognized. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). Education is a university's first priority; adjudication of student disputes is, at best, a distant second. See, *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 88, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978).

Defendants began targeting Plaintiff at the urging of Defendant Mital via his April 21, 2026 email and subsequently by express direction from Board Member Austin Folnagy to Defendant Rupp. Defendant Rupp then actively sought out information and filed incident reports despite others not being willing to do so. See, e.g. Decl. Rupp. ¶ 7. See also, Exhibit 4 to Rupp's Declaration in which the solicited students stated "that they did not feel Richard posed an immediate threat to himself of others." Defendant Rupp sought out information per members of the Board for the ultimate purpose of creating a pretextual basis for issuing a no trespass notice and chilling Plaintiff's speech. See, e.g. Decl. Rupp ¶ 11.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Defendants' no trespass notice combined with barring Plaintiff for registering for classes until 2099 effectively silenced his speech (which Defendants disfavored), and denied him the opportunity to attend college and obtain an education. These combined actions, done without notice or opportunity for a hearing, violate and punish Plaintiff for speaking out against an elected public body's decisions. Plaintiff's protected political speech occurred within a designated Free Speech area (LCC campus) that specifically allows for such speech.

Plaintiff will likely prevail on his claims.

C. Plaintiff will Suffer Irreparable Harm.

Defendants do not contest that the exclusion from a public community college education based on retaliation for exercising First Amendment rights constitutes irreparable harm.

D. Balancing the equities favors Plaintiff.

Defendants do not contest that the equities favor Plaintiff.

E. Injunctive relief is in the public interest.

Plaintiff was barred from campus and from registering for classes based on his speech. Defendants do not address any of the cases holding that the public interest is served by allowing First Amendment speech. Rather, Defendants attempt to recast their decision to silence dissent of college board decisions made by an outspoken student as one of a safety concern. Neither the law, nor the facts support Defendants' characterization.

Defendant Rupp's Incident report notes that Plaintiff's "crime" or "charge" is for Harassment pursuant to ORS 166.065. Decl. Rupp, Ex. 3, p. 1 (upper left corner "CHAR – 166.065 Harassment). Upon this pretextual premise Defendants argue that Plaintiff was "angry and threatening;" Plaintiff "accosted her;" Plaintiff had "repeated threatening behaviors;" Plaintiff made a "troubling statement;" Plaintiff sent "threatening emails;" Plaintiff "might



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

commit physical violence;" Plaintiff "uses violently charged language;" and Plaintiff has "erratic behavior." See Response, pgs. 2-5.

Contemporaneous with these characterizations of Plaintiff's behavior Defendant Tinkham reportedly "felt intimidated" and "unnerved" and "unsafe." *Id*. at p. 3. Notwithstanding these attributed hearsay statements, Defendant Tinkham declined to make any report of the incident. *Id*. Two students reportedly interviewed by Defendant Rupp stated they did not feel that Plaintiff posed a threat to others. Decl. Rupp. Ex. 4, p. 1.

To prove Plaintiff committed the crime of harassment (ORS 166.065), Defendants must enter admissible evidence that: (1) Plaintiff intended to subject Defendants to harassment, annoyance, or alarm; (2) Plaintiff conveyed a threat; (3) Defendants were actually alarmed by the threat; and (4) Defendants' alarm was objectively reasonable. *State v. Murphy*, 306 Or App 535, 540, 475 P3d 100, 103 (2020). Defendants cannot prove the crime of harassment against Plaintiff because there is no intent and most importantly, there was no threat.

The Oregon Supreme Court has observed that only specific factual communication can demonstrate a "threat." *D. O. v. Richey*, 301 Or App 18, 28-29, 456 P3d 348, 357 (2019). It observed that "in a number of settings, vigorous advocacy of conflicting viewpoints may create feelings of anger, fear, annoyance or loss of control." *Id*. Significantly, "it must be communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id*. citing *State v. Moyle*, 299 Or 691, 703-05, 705 P2d 740 (1985). And, "it excludes the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Id*.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Plaintiff did not make any threat to any person, student, LCC employee, administrator, or Board Member. Not a single person interviewed by Defendant Rupp and her department, or presented in Defendants' proffered evidence, stated any unequivocal fear of imminent and serious personal violence from the speaker. Plaintiff never made any threats of imminent, serious personal violence against any person. At most, Plaintiff made quirky, hyperbolic, rhetorically excessive statements about government suppression, irony, sarcasm, and scattered thinking with poorly chosen metaphors. Fellow students stated they did not feel that Plaintiff posed a threat. Decl. Rupp, Ex. 4.

Plaintiffs verbal and non-verbal statements – all of them, collectively – are protected by the First Amendment. As such, when free speech values are at stake, Defendants must justify for silencing speech that are "far stronger than mere speculation about serious harms." *Bartnicki v. Vopper*, 532 U.S. 514, 531, 121 S. Ct. 1753, 149 L. Ed. 2d 787 (2001) (quoting *United States v. Treasury Emps.*, 513 U.S. 454, 475, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995)).

The First Amendment does not permit public community colleges to broadly conjure hypotheticals in support of expressive burdens (e.g. silencing and barring an outspoken critic). *Wash. Post v. McManus*, 944 F3d 506, 522 (4th Cir 2019). "If any evidence—no matter how indirect or futuristic—could concretize a purported harm, speech would be rendered substantially more vulnerable." *Id*.

F. Defendants do not present admissible evidence.

Most of the Exhibits to Defendant Rupp's Declaration contain inadmissible hearsay. This includes Exhibit 1, 2, 3, 4, 6, 7, and 8. These exhibits should be excluded as inadmissible hearsay not subject to any exception.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

## CONCLUSION

LCC, its Board Members, its Administrators, its Deans, its Public Safety officers all knowingly violated Riordan's First Amendment rights, which are clearly established. Worse, LCC used its governmental authority to silence speech critical of its decision and operations and by terminating the education of a young man. A preliminary injunction should issue in favor of Plaintiff to allow him to continue his education at LCC.

DATED this 17th day of September, 2026.

THE BRAGUE LAW FIRM

By ______________________________
Kevin C. Brague, OSB No. 050428
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 2,839 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.



The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243